## UNITED STATES v. DWYER.

(District Court, W. D. Texas, San Antonio Division. May 1, 1893.)

### No. 1,181.

VIOLATION OF ELECTION LAW—INDICTMENT.

Gen. Laws Tex. 1892, c. 13, provides that any elector who declares that he is unable to prepare his ballot "shall, upon request, receive the assistance of two of the judges in the preparation thereof," but does not specify how or where the assistance shall be rendered. *Held*, that an indictment charging that one judge of election, acting alone, prepared ballots for electors at the table at which the election officers sat, from slips handed to him by the electors, without alleging that he willfully disregarded his duty, or negligently failed to perform it, did not state a violation of said law.

At Law. Indictment of Ed. Dwyer for violation of the election laws. Defendant moved to quash the indictment. Motion sustained.

A. J. Evans, U. S. Atty., and T. J. McMinn, for the Government.

Denman & Franklin, for defendant.

MAXEY, District Judge. The questions arise on motion to quash the indictment. The first and fifth grounds assert, substantially, that the acts charged against defendant do not constitute an offense against the laws of the United States or the state of Texas. The indictment is framed upon section 5515 of the United States Revised Statutes. So much of said section as it becomes necessary to consider reads as follows:

"Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof; or who violates any duty so imposed; or who knowingly does any act thereby unauthorized, with intent to affect any such election, or the result thereof, * * * shall be punished," etc. Rev. St. U. S. § 5515.

The indictment is of considerable length, and need not be fully inserted. It is alleged that defendant was the presiding officer of election at the general election held at precinct No. 6 in Bexar county, Tex., and was a judge of said election, and, as such, he was bound to perform all the duties and obligations enjoined by the laws of the state and the United States in regard to said election; that the defendant, instead of performing the duties so required by law, unlawfully and knowingly, and with intent to affect the election and the result thereof, for a member of congress, did certain acts unauthorized by law, which are enumerated by the indictment in the following language:

"That the said Ed. Dwyer, at said election, at said 6th election precinct of Bexar county, Tex., on said 8th day of November, 1892, and upon one certain elector, a Mexican, whose name is unknown to the grand jury, presenting himself at the polling place to secure and cast his ballot for a member of congress from the 12th congressional district of Texas, did make out a ticket for said aforesaid unknown person from a slip which was handed him then and there by said aforesaid unknown man, and this act of making the ticket was then and there did and done at the table at which the presiding judge and officers were sitting, and not in or near the compartment or booth provided at said election; and, further, that the said aforesaid Ed. Dwyer, at said election, at said 6th election precinct of Bexar county, Tex., on said 8th day of November, 1892, upon three Mexican electors presenting themselves to receive and cast their ballots, to wit, one Marcilino Valinciola, one Alejos Perez, and one Antonio Valdez, at said election precinct No. six (6) of Bexar county, Tex., on said 8th day of November, 1892, for a member of congress from the 12th congressional district of Texas, did make out a ticket for each of the above parties to vote for a member of congress from the 12th congressional district, and this making out of tickets was alone done by said Ed. Dwyer at the table at which the presiding judge and officer sat, and was not in or at or near the compartments and booths prepared at said election precinct; and, further, the said aforesaid Ed. Dwyer, at said general election, at said election precinct No. six (6) of Bexar county, Tex., on said 8th day of November, 1892, upon twenty and more Mex-

v.56f.no.7—30

ican and negro electors, whose names are unknown to the grand jury, present-
ing themselves at the voting place in election precinct No. six (6) of Bexar
county and state of Texas, to secure and cast their votes for a member of
congress for the 12th district (congressional) of Texas, did make out for each
of said twenty and more Mexican and negro electors a vote and ballot from a
slip and slips of paper then handed him by said electors, and this making out
of votes and ballots for said twenty and more Mexican and negro electors
was then and there did and done at the table of the presiding officer at said
election, and not at, in, or near the compartments or booths prepared at such
election precinct No. six (6) of Bexar county; and, further, that each and
every one of the ballots so made out as above had on the same the name,
unknown to the grand jury, of a candidate for congress from the 12th con-
gressional district of Texas, and were cast and voted at said election at said
election precinct No. six (6) of Bexar county, Tex., by the persons for whom
they were then and there unlawfully and unauthorizedly and knowingly made
out as aforesaid by said Ed. Dwyer, contrary to the statute, and against the
peace and dignity of the United States of America."

As the allegations of the indictment charge that the defendant
committed certain acts, as judge of the election, unauthorized by
the laws of this state, resort must necessarily be had to those
laws to ascertain whether the acts charged were thereby unauthor-
ized. In other words, we must look to the state laws to de-
termine whether the acts charged in the indictment constitute
an offense. The following provisions of the act of the legislature
of Texas bear upon the question now under consideration: Section
23 provides that—

"The following safeguards and regulations shall be observed to secure the
voter from interference while casting his ballot at said election, to wit:
The polling places in the several precincts in the city shall be provided
with a guard rail so constructed and placed that only such persons as are in-
side said rail can approach within six feet of the ballot boxes or compart-
ments or booths at which electors are to prepare their ballots for voting.
The arrangements shall be such that neither the ballot boxes nor voting booths
nor the electors while preparing their ballots shall be hidden from view of those
just outside of the said guard rail or from the judges; and yet the same shall
be far enough removed and so arranged that the elector may conveniently
prepare his ballot for voting with secrecy."

The section then provides for the number and size of the booths;
that same shall be provided by a board composed of the county
judge, sheriff, and clerk; how same shall be paid for; and, finally:

"During the election and counting of ballots, no person other than the
judges and clerks of elections, and the electors, admitted as herein provided
for the purpose of providing their ballots and voting, shall be admitted or
permitted to be within said rail."

"Sec. 24. All ballots used by the voters at said elections shall be furnished
by the officers conducting said election, upon which shall be printed the names
of all candidates for state, county, precinct, or city officers (offices) upon one
ticket, and arranged according to the respective parties to which the can-
didates may belong, and, whenever a voter has been furnished with a ballot
by any officer conducting the election, the presiding officer shall stamp with
a rubber stamp provided for this purpose the words 'Official Ballot,' and no
ballot cast without said words stamped upon it by the said presiding officer
shall be counted at said election.

"Sec. 25. All ballots used at any election shall be upon substantially the
same character of paper, which shall be white, and any candidate shall have
the right to have ballots printed such as are named in the preceding section,
which he must furnish to the presiding officer at least one day before the day
of the holding of the election.

"Sec. 26. Not more than one person shall at one time be permitted to occupy any one compartment or place provided for electors to prepare their ballots, except when an elector is unable to prepare his ballot, he may (be) accompanied by the two judges to assist him, and no person shall remain in or occupy any such compartment longer than may be necessary to prepare his ballot.

"Sec. 27. Any elector who declares to the presiding officer that he cannot read or write, or that, by blindness or other physical disability, he is unable to prepare his ballot, shall, upon request, receive the assistance of two of the judges in the preparation thereof."

Gen. Laws 1892, pp. 13–19, c. 13.

The specific unauthorized acts charged to have been committed by the defendant may be condensed as follows: (1) That he made out ballots for the electors, in the indictment mentioned, at the table at which the presiding judge and officers sat, and not within the booths or compartments previously provided for such purpose. (2) The ballots so prepared by the defendant were made out from slips of paper handed him by the electors. (3) He prepared ballots for certain persons named in the indictment, acting alone, and without the assistance of another judge. Do the acts charged constitute an offense against the law?

It is said by the supreme court, in the case of U. S. v. Brewer, 139 U. S., at page 288, 11 Sup. Ct. Rep. 538, that—

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. U. S. v. Sharp, Pet. C. C. 118. Before a man can be punished, his case must be plainly and unmistakably within the statute. U. S. v. Lacher, 134 U. S. 624, 628, 10 Sup. Ct. Rep. 625."

And it is said by Judge Dillon, in U. S. v. Whittier, 5 Dill. 39, that—

"Statutes creating crimes will not be extended by judicial interpretation to cases not plainly and unmistakably within their terms. If this rule is lost sight of, the courts may hold an act to be a crime when the legislature never so intended. If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused."

In the Case of Brewer, already noticed, at page 287, 139 U. S., and at page 541, 11 Sup. Ct. Rep., the court says:

"It is contended that these sections [referring to the sections of the Tennessee statute] impliedly require that the box shall be opened, and the names of the persons appearing in each ballot read aloud, at the place where the election was held, and that the ballot box shall not be removed from the place where the election was held before the votes are counted. But this is urged merely as an implication. The statute does not provide distinctly and specifically, and in words required in a criminal statute, that the box shall be opened at the place where the election was held, and the names of the persons appearing in each ballot be read aloud at that place, and the ballot box not be removed from that place before the votes cast are counted.'

An examination of the Texas statute will disclose the pertinency of the above extract from the opinion of the supreme court to the present case. Sections 23 and 24 of the act of the legislature do not require the elector to make out his ballot, nor the election judge to assist in its preparation, within the compartment provided for the purpose. The law in that respect is permissive, not mandatory. The language of section 27 is that "any elector

who declares to the presiding officer that he cannot read or write, or that, by blindness or other physical disability, he is unable to prepare his ballot, shall, upon request, receive the assistance of two of the judges in the preparation thereof." No place is mentioned where this duty shall be performed, and to confine or limit the duty of the judge in such case to the compartment provided for electors could only be done by inference and implication. But, to punish a man for nonperformance of duty, it is not sufficient that the law impliedly requires him to do the act. The statute must be clear and explicit in its terms in defining that duty, in order that he may know what he is called upon to do, and what it is his duty to avoid.

What has already been said applies with equal force to the other charges contained in the indictment. As to the charge that the defendant made out the ballots of electors from slips of paper handed him, it is sufficient to say that the statute is altogether silent on that subject. The language of the law is that the elector "shall, upon request, receive the assistance of two of the judges in the preparation thereof;" that is, in the preparation of the ballot. How the assistance is to be rendered does not appear. The law does not prohibit the use of slips, which it must do before the defendant can be adjudged criminally responsible for their use. That one judge of election may, under some circumstances, render himself criminally liable for making out ballots of electors without the assistance of another judge, would seem to follow from the provisions of section 29 of the act. It is therein made an offense for any judge or clerk of an election to "willfully disregard any of the provisions of this act," or to negligently fail to enforce any of its provisions. One of the provisions of the act requires, upon request of the elector, the assistance of two of the judges in the preparation of his ballot. If such request were made, it would be the duty of two of the judges to render the assistance demanded, and a willful disregard of that duty would subject the offender to the pains and penalties of the law. Or, if one of the judges, upon request of the elector for assistance, should willfully persist in aiding him alone, or refuse to extend the assistance required, in conjunction with another judge, in such cases, and others that might be mentioned, the judge so offending against the law would render himself criminally responsible for his willful disregard of, and negligent failure to perform, a manifest duty. But the legislature, in enacting the law in question, never intended to make it a criminal offense in all cases for one judge alone to aid an elector in the preparation of his ballot; and hence, to bring a particular case within the inhibition of the statute, the pleader should allege all the facts and circumstances necessary to constitute the offense. U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. Rep. 571; U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512. See, also, U. S. v. Belvin, 46 Fed. Rep. 381. There is no charge that the defendant willfully disregarded his duty, or negligently failed to perform it, in any of the respects before mentioned, or in any other particular, which would make him criminally liable.

The court is of opinion that the indictment fails to charge an offense against the laws either of the United States or the state of Texas. The view taken by the court of the questions already discussed renders it unnecessary to consider other objections urged by defendant in support of his motion.

The motion to quash the indictment will be sustained, and it is so ordered.